Brian C. Claassen (CA 253627)
Brian.claassen@knobbe.com
Daniel C. Kiang (CA 307961)
daniel.kiang@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Adam B. Powell (CA 272725)
adam.powell@knobbe.com
Ashley C. Morales (CA 306621)
ashley.morales@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3679 Valley Centre Drive, Suite 300
San Diego, CA  92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff
PACIFIC RIM CAPITAL, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC RIM CAPITAL, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR JACKSON, an individual,<br><br>Defendant. | Civil Action No. 8:26-cv-1328<br><br>**COMPLAINT**<br><br>JURY DEMAND |

Plaintiff Pacific Rim Capital, Inc. ("Plaintiff" or "PRC") hereby complains of Defendant Taylor Jackson ("Defendant" or "Jackson") and alleges as follows:

## THE PARTIES

1. Plaintiff PRC is a California corporation with its principal place of business at 525 Technology Dr., Suite 400, Irvine, CA 92618.

2. PRC formerly employed Defendant Jackson as an Account Executive.

3. Upon information and belief, Jackson resides at 19122 Stefani Ave., Cerritos, CA 90703.

## JURISDICTION AND VENUE

4. This civil action arises under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1836(b)-(c). This Complaint further alleges trade secret misappropriation under California law and breach of contract.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

6. Defendant Jackson resides within this judicial district and has committed the acts complained of in this judicial district.

7. Venue is proper in the Southern Division of the Central District of California pursuant to 28 U.S.C. § 1391(b) because PRC is located in Irvine and a substantial part of the acts giving rise to the claims asserted herein occurred within Orange County, CA, where Defendant Jackson was previously employed by PRC.

## STATEMENT OF THE CASE

8. This action seeks relief for the theft of PRC's highly confidential information and trade secrets by Jackson. Jackson betrayed PRC's trust by wrongfully downloading and transferring to a personal computer more than 130 files comprising PRC's highly confidential asset reports, pricing spreadsheets, contact lists, client proposals, client contracts, client program agreements,

presentations, and other documents shortly before the end of his employment at PRC. Jackson then improperly retained those documents and used the confidential and proprietary information in those documents at his new employer. Jackson also breached his employment agreement with PRC by using and disclosing PRC's confidential information.

## STATEMENT OF FACTS

9. PRC is a California-based equipment leasing and financial advisory services company based in Irvine, CA. Since its founding in 1990, PRC has grown to become one of North America's largest independent providers of equipment leasing and finance solutions, with approximately $2 billion in assets under management. PRC specializes in helping large businesses acquire and manage expensive operational equipment through customized leasing and asset management programs.

10. PRC serves large corporate clients, including companies at the top of the Fortune 500 list, across multiple industries, including warehousing, manufacturing, IT infrastructure, transportation, renewable energy, agriculture, and construction. PRC acts as a financial partner to its clients, purchasing large-scale equipment and leasing it to PRC's clients to help clients reduce upfront capital expenditures and optimize the lifecycle cost of their equipment. PRC also provides services including procurement support, asset tracking, lease servicing, and equipment remarketing.

11. PRC carefully guards the secrecy of its confidential and proprietary information and documents. For example, PRC has policies in place regarding restrictions on the storage, use, and access to PRC's trade secrets, including its proprietary and confidential information. PRC also requires employees to sign agreements precluding employees from disclosing or making use of any PRC trade secrets or other proprietary and confidential information except as authorized by PRC and as necessary for the performance of the employees' duties.

PRC also has a variety of electronic measures in place to protect its confidential information, including assigning each individual a personal user name, requiring each user to login with their user name and password, requiring users to use a VPN to access the PRC network, requiring employees to use a passcode from Microsoft Authenticator to access both PRC's network and SharePoint site, and only allowing access to certain documents based on the employee's job function. PRC implemented such policies and procedures to maintain the confidentiality of its sensitive information.  These policies were in place during Jackson's employment and remain in place today.

12.     Defendant Taylor Jackson was hired by PRC in September 2019 and held the position of Enterprise Account Executive during his employment at PRC. Jackson was based in PRC's Irvine, CA headquarters.

13.     In his role as an Enterprise Account Executive, Jackson was responsible for, *inter alia*, generating new business and maintaining relationships with enterprise-level clients.  In furtherance of his duties, Jackson was entrusted with access to PRC's confidential and proprietary business information, including, but not limited to, current customer information, prospective customer information, existing customer contracts, lease portfolios, client and company financial data, and information concerning PRC's assets under lease.

14.     Among other things, Jackson agreed to the following upon his hiring on September 10, 2019:

All files, contracts, documents, customer lists, finance company and bank lists, memorandums, electronic memorandums, databases, etc. shall at all times remain the proprietary property of PRC.

At no time shall any of the above referenced documents or any of the information contained therein be removed from PRC's premises without management's prior written approval.

/ / /

-3-

15.     On September 11, 2019, Jackson also acknowledged and signed PRC's Employee Handbook.  On May 2, 2025, Jackson also acknowledged and signed another version of PRC's Employee Handbook.  That handbook contained the following confidentiality obligations:

**Section 5.02 Business Conduct and Ethics**:

We expect that all officers, directors, and Employees keep trade secrets, proprietary information, and similar confidential commercially-sensitive information (e.g., financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.) about the Company our operations, or that of our customers or partners, in strict confidence.

**Section 5.06 Confidential Information**

In the course of your work, you may have access to trade secrets or similarly protected proprietary or confidential information regarding PRC business (such as financial data, research and development, marketing, business plans or strategies, suppliers, business partners or customers). You have a responsibility to prevent revealing or divulging any such information unless it is necessary for you to do so in the performance of your duties or as required by law.

16.     On June 20, 2025, Jackson also acknowledged and agreed to abide by PRC's Confidentiality Policy, which stated:

Employees may not disclose confidential information or trade secrets to anyone outside the Company without appropriate authorization. Confidential information may include internal reports, financials, client lists, methods of production, or other internal business-related communications. Trade secrets may include information regarding the development of systems, processes,

-4-

products, design, instruments, formulas, and technology. Confidential information may only be disclosed or discussed with those who need the information. Conversations of a confidential nature should not be held within earshot of the public or clients.

17.    During his employment at PRC, Jackson achieved significant sales successes and was entrusted with high-value client accounts covering a substantial portion of PRC's business portfolio.

18.    Jackson resigned from and departed PRC on March 24, 2026.

19.    Upon information and belief, after departing from PRC, Jackson commenced employment with CSI Leasing, Inc. ("CSI"), a direct competitor of PRC.

20.    In April 2026, PRC conducted an internal forensic analysis that indicated that, on or about March 21–23, 2026, Jackson deliberately and systematically created, stored, downloaded, and exfiltrated more than 130 files containing PRC's proprietary and confidential information.  These files included spreadsheets containing PRC's aggregated client contact information, client accounts, active leases, and open bid pipelines exported from PRC's customer relationship management (CRM) system.  Those spreadsheets included information regarding all of PRC's currently active clients, what they were leasing, the terms of their leases, when those leases matured, their monthly payments, and which leases are month-to-month and subject to immediate termination.  The spreadsheets also included PRC's open bids for new business, including the identities of potential clients, details of the potential new business, PRC's proposals, and even PRC's internal assessment of their likelihood of success.

21.    PRC confidential information comprises comprehensive datasets about PRC's clients, their existing leases, their preferences, their contact information, as well as PRC's own strategies in developing new business.  For

example, the exported Active Lease Portfolio information from PRC's CRM system comprises comprehensive information about PRC's leases with multiple clients, including their identities, asset classes, quantities, lease start and maturity dates, and monthly payments. With this information, one would know what each client leases, what their payments and interest rates are, when their leases expire, and which leases are on a month-to-month basis and subject to termination on short notice and competitive rebidding. This information would allow a competitor to target PRC's most vulnerable leases and present proposals to undercut PRC.

22. The exported opportunity information from PRC's CRM system also represents PRC's open bid pipeline. PRC's open bid pipeline comprises details on all of PRC's currently open bids for new business, including client identities, descriptions, dollar values, bid stage, and even PRC's internal assessment of its win probability. In the equipment leasing industry, the knowledge that a client is actively evaluating bids is in and of itself valuable intelligence. Armed with PRC's open bid pipeline, a competitor could easily target clients and potential clients.

23. Additionally, Jackson also took Master Lease Agreements with some of PRC's largest clients, detailing the terms of PRC's most valuable contracts, as well as PRC's proprietary pricing algorithms, which are used to calculate PRC's proposed lease payments for its clients. These files include the terms of PRC's existing leases, as well as PRC's proprietary pricing models that calculate monthly lease payments by asset type, usage hours, lease term, and other factors. A competitor with this information can predict how PRC would price future deals and undercut PRC on every future bid.

24. Jackson also exported over 50 spreadsheets of client contact information from PRC's CRM system. These lists include the personal mobile phone numbers and direct email addresses for over 6,000 individuals at over 30

PRC clients.  This information is among PRC's most valuable and sensitive relationship assets because it was compiled over years of direct engagement with PRC's clients and is not readily ascertainable from public sources.  For competitors in the field of equipment leasing, the knowledge of key personnel within potential clients who are responsible for equipment leases is highly valuable.  One would not need to start from scratch in client outreach but could instead contact those key personnel as if they had been servicing their leases for years.

25.    Jackson also took account playbooks for at least two major PRC clients, which detail PRC's strategies for growing those client accounts and those clients' preferences.

26.    The confidential information described in paragraphs 20-25 above is collectively referred to herein as PRC's "Confidential Information."   This Confidential Information is not publicly available and is closely guarded within PRC.

27.    These files and the Confidential Information therein were developed at significant expense by PRC and maintained under strict confidentiality protocols.  Jackson was not authorized to remove the files outside of PRC or to use the files outside of his employment with PRC.

28.    Upon information and belief, before Jackson departed PRC, Jackson accessed PRC's customer relationship management (CRM) system to export spreadsheets comprising client information, accounts, active leases, and opportunities data.  Access to PRC's CRM system is restricted to employees who have a need to access that information, and as an Enterprise Account Executive, Jackson was entrusted with access to that information.

29.    Upon information and belief, before Jackson departed PRC, Jackson also retrieved specific high-value confidential documents, including executed client contracts, from PRC's document management system.

30.     Upon information and belief, in the days immediately prior to Jackson's departure from PRC, Jackson composed draft emails in his company Outlook account and attached the exported files.  Jackson then accessed his company email account via a web browser on his personal MacBook and moved the attached files from the draft emails to his personal MacBook.  Jackson then attempted to cover up his tracks by deleting the draft emails.  Despite Jackson's deletion attempts, the deleted emails and file attachments were recovered during PRC's internal forensic analysis.

31.     Upon information and belief, Jackson exfiltrated PRC confidential and proprietary information using this draft email technique at least twelve times between March 21–23, 2026.

32.     Upon information and belief, Jackson used PRC's confidential and proprietary information he wrongfully obtained from PRC to solicit PRC's clients and prospective customers for the benefit of his new employer, CSI.

33.     PRC contacted CSI after learning that Jackson had contacted PRC's clients on behalf of CSI.  CSI has generally been cooperative with PRC.  CSI's General Counsel confirmed to PRC that substantial PRC material existed on Jackson's work computer.  CSI also indicated that it had discussed this matter with Jackson, that it had instructed Jackson not to use any PRC information, and that CSI had instructed Jackson to destroy any PRC information that he maintained.  CSI indicated that Jackson was apologetic and promised to cooperate with all of CSI's instructions.  CSI also indicated that it had placed Jackson on a three-month non-solicitation protocol.

34.     On April 29, 2026—after CSI informed PRC of the above—PRC was informed by one of its largest clients that Jackson had attempted to contact a senior executive on his personal cell phone.  Jackson did not work with that client or that senior executive while employed at PRC.  On information and belief, Jackson obtained that senior executive's personal contact information from the

-8-

files that he took from PRC.

35.    On April 29, 2026, counsel for PRC attempted to serve a letter on Jackson regarding his improper retention, use, and disclosure of PRC's confidential information.  Among other things, the letter demanded that Jackson (a) cease and desist from using, disclosing, or distributing any confidential or proprietary information belonging to PRC; (b) preserve all information that may be relevant in a dispute with PRC; (c) agree to allow an independent computer forensic examiner to access, image, preserve, and review any computer, computer device, email account, and/or cloud storage account that may contain PRC information; (d) agree to allow the independent computer forensic examiner destroy any such information that they find; and (e) provide a written statement confirming that all PRC confidential and proprietary information he removed has been destroyed.

36.    After unsuccessfully attempting to serve the letter on Jackson several times, counsel for PRC emailed it to Jackson on May 4, 2026.  Soon after receiving PRC's letter, Jackson called counsel for PRC to discuss the matter.  During the call, Jackson acknowledged that he had taken a "folder" with information that he collected from PRC.  Jackson further indicated that his new employer, CSI Leasing, instructed Jackson to delete all PRC information.  Jackson promised that he did, in fact, delete all such information.  Jackson further agreed to provide a declaration stating that he would not use any PRC information, that he had deleted all PRC information, and that he did not maintain any PRC information.  However, Jackson indicated that he would likely refuse to agree to have an independent computer forensic examiner (a) access, image, preserve, and review and computer, computer device, email account, and/or cloud storage account that may contain PRC information, and (b) destroy any such information that the computer forensic examiner finds (the "Forensic Confirmation").  Jackson indicated that he would respond in writing with his

position.

37. On May 4, 20206, Jackson contacted PRC's general counsel to discuss the matter. During that call, Jackson again indicated that he would likely refuse to agree to the Forensic Confirmation.

38. On May 7, 2026, PRC wrote to Jackson and asked him to confirm that he would allow the Forensic Confirmation. As of the filing of this complaint, Jackson has not responded to that request.

39. On information and belief, including that Jackson refused to allow the Forensic Confirmation and has now refused to respond to PRC, Jackson's discussions with CSI and PRC's counsel were false. On information and belief, Jackson has maintained PRC's confidential information, continues to use PRC's confidential information, and intends to continue doing so in the future.

## FIRST CAUSE OF ACTION

### (Trade Secret Misappropriation Under the

### Federal Defense of Trade Secrets Act)

40. PRC hereby realleges and incorporates by reference the allegations set forth in paragraphs 1-39.

41. This is a cause of action for Misappropriation of Trade Secrets under the Federal Defense of Trade Secrets Act of 2016, 18 U.S.C. §§ 1836 *et seq.*, based upon Jackson's wrongful and improper acquisition, use, and disclosure of PRC's confidential and proprietary trade secret information.

42. PRC owns the trade secrets including, but not limited to, the Confidential Information previously described.

43. PRC's Confidential Information is currently, and was at the time of Jackson's misappropriation, not generally known and not readily ascertainable. All individuals with access to PRC's Confidential Information were instructed to protect it, and they were subject to obligations to keep PRC's Confidential Information secret. Additionally, PRC's Confidential Information is not

generally known to the public or to other persons who can obtain economic value from its disclosure or use. PRC's Confidential Information is not readily ascertainable by the public or to other persons.

44. PRC's Confidential Information has actual and potential independent economic value because it is not generally known or readily ascertainable. The actual and potential independent economic value of PRC's Confidential Information is derived from not being generally known or readily ascertainable because it gives PRC an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

45. PRC made reasonable efforts under the circumstances to keep PRC's Confidential Information secret. For example, PRC efforts included marking documents as confidential, instructing those individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals to sign confidentiality agreements. Thus, PRC's Confidential Information qualifies as a trade secret.

46. PRC is informed and believes, and thereon alleges, that Jackson misappropriated PRC's Confidential Information through acquisition by improper means. Upon information and belief, Jackson surreptitiously removed PRC's Confidential Information and saved it to his personal computer and onto his work computer at his new employer, in breach of his obligations to maintain their secrecy and to not use PRC's Confidential Information outside of his employment at PRC. This constitutes "improper means" under 18 U.S.C. § 1839(6) because Jackson acquired PRC's Confidential Information through theft and in breach of his duty to maintain the secrecy of that information.

47. PRC is informed and believes, and thereon alleges, that Jackson also misappropriated PRC's Confidential Information by use. Jackson improperly used PRC's Confidential Information, without PRC's consent, in order to identify

and solicit PRC's customers and potential customers for his own benefit and for the benefit of PRC's direct competitor, CSI. Jackson used improper means to acquire knowledge of the Confidential Information, and his knowledge was acquired under circumstances giving rise to a duty to maintain secrecy and limit the use of the Confidential Information. Jackson's unauthorized and improper use of PRC's Confidential Information is ongoing and continues to this day.

48.    PRC is informed and believes, and thereon alleges, that Jackson also misappropriated PRC's Confidential Information by disclosure. On information and belief, Jackson disclosed PRC's Confidential Information, without PRC's consent, to CSI by copying or otherwise transferring PRC's Confidential Information to Jackson's CSI work computer. CSI has confirmed to PRC the existence of PRC confidential files on Jackson's work computer at CSI. Jackson used improper means to acquire knowledge of the Confidential Information, and his knowledge was acquired under circumstances giving rise to a duty to maintain secrecy and limit the use of the Confidential Information. Jackson's unauthorized and improper disclosure of PRC's Confidential Information is ongoing and continues to this day.

49.    PRC was harmed by Jackson's acquisition, use, and disclosure of PRC's Confidential Information, and Jackson's actions were substantial factors in causing PRC's harm. As a direct and proximate result of Jackson's willful, improper, and unlawful acquisition, use, and disclosure of PRC's Confidential Information, PRC has suffered, and will continue to suffer, great harm and damage. PRC will continue to be irreparably damaged unless Jackson is enjoined from further use and disclosure of PRC's Confidential Information.

50.    Jackson was unjustly enriched by Jackson's acquisition, use, and disclosure of PRC's Confidential Information, and Jackson's actions were substantial factors in causing Jackson to be unjustly enriched. Jackson was unjustly enriched because his misappropriation of PRC's Confidential

Information caused Jackson to receive a benefit that he otherwise would not have achieved.

51. In the event that neither damages nor unjust enrichment caused by Jackson's misappropriation of PRC's Confidential Information is provable at trial, PRC is entitled to a reasonable royalty for the period of time that Jackson's use of PRC's Confidential Information could have been prohibited.

52. The aforementioned acts of Jackson in wrongfully misappropriating PRC's Confidential Information was, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by 18 U.S.C. § 1836(b)(3)(D), and exemplary damages, as provided by 18 U.S.C. § 1836(b)(3)(C).

## SECOND CAUSE OF ACTION
### (Trade Secret Misappropriation Under California's Uniform Trade Secret Law)

53. PRC hereby realleges and incorporates by reference the allegations set forth in paragraphs 1-52.

54. This is a cause of action for Misappropriation of Trade Secrets under California's Uniform Trade Secrets Act, Cal. Civ. Code. §§ 3426 *et seq.*, based upon Jackson's wrongful and improper acquisition, use, and disclosure of confidential and proprietary trade secret information of PRC.

55. PRC owns the trade secrets, including, but not limited to, the Confidential Information previously described.

56. PRC's Confidential Information is currently, and was at the time of Jackson's misappropriation, not generally known. All individuals with access to PRC's Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep PRC's Confidential Information secret. Additionally, PRC's Confidential Information is not generally known to the public or to other persons who can obtain economic value from its disclosure or

use.

57.     PRC's Confidential Information has actual and potential independent economic value because it is not generally known.  The actual and potential independent economic value of PRC's Confidential Information is derived from not being generally known because it gives PRC an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

58.     PRC made reasonable efforts under the circumstances to keep PRC's Confidential Information from becoming generally known.  For example, PRC efforts included marking documents as confidential, instructing those individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals to sign confidentiality agreements.  Thus, PRC's Confidential Information qualifies as a trade secret.

59.     PRC is informed and believes, and thereon alleges, that Jackson also misappropriated PRC's Confidential Information through acquisition by improper means.  Upon information and belief, Jackson surreptitiously removed PRC's Confidential Information and saved it to his personal computer and onto his work computer at his new employer, in breach of his obligations to maintain their secrecy and to not use PRC's Confidential Information outside of his employment at PRC.  This constitutes "improper means" under Cal. Civ. Code § 3426.1(a) because Jackson acquired PRC's Confidential Information through theft and in breach of his duty to maintain the secrecy of that information.

60.     PRC is informed and believes, and thereon alleges, that Jackson also misappropriated PRC's Confidential Information by use.   Jackson improperly used PRC's Confidential Information, without PRC's consent, in order to identify and solicit PRC's customers and potential customers for his own benefit and for the benefit of PRC's direct competitor, CSI.  Jackson used improper means to acquire knowledge of the Confidential Information, and his knowledge was

-14-

acquired under circumstances giving rise to a duty to maintain secrecy and limit the use of the Confidential Information. Jackson's unauthorized and improper use of PRC's Confidential Information is ongoing and continues to this day.

61. PRC is informed and believes, and thereon alleges, that Jackson misappropriated PRC's Confidential Information by disclosure. On information and belief, Jackson disclosed PRC's Confidential Information, without PRC's consent, to CSI by copying or otherwise transferring PRC's Confidential Information to Jackson's CSI work computer. CSI has confirmed to PRC the existence of PRC confidential files on Jackson's work computer at CSI. Jackson used improper means to acquire knowledge of the Confidential Information, and his knowledge was acquired under circumstances giving rise to a duty to maintain secrecy and limit the use of the Confidential Information. Jackson's unauthorized and improper disclosure of PRC's Confidential Information is ongoing and continues to this day.

62. PRC was harmed by Jackson's acquisition, use, and disclosure of PRC's Confidential Information, and Jackson's actions were substantial factors in causing PRC's harm. As a direct and proximate result of Jackson's willful, improper, and unlawful acquisition, use, and disclosure of PRC's Confidential Information, PRC has suffered, and will continue to suffer, great harm and damage. PRC will continue to be irreparably damaged unless Jackson is enjoined from further use and disclosure of PRC's Confidential Information.

63. Jackson was unjustly enriched by Jackson's acquisition, use, and disclosure of PRC's Confidential Information, and Jackson's actions were substantial factors in causing Jackson to be unjustly enriched. Jackson was unjustly enriched because his misappropriation of PRC's Confidential Information caused Jackson to receive a benefit that he otherwise would not have achieved.

/ / /

64. In the event that neither damages nor unjust enrichment caused by Jackson's misappropriation of PRC's Confidential Information is provable at trial, PRC is entitled to a reasonable royalty for the period of time that Jackson's use of PRC's Confidential Information could have been prohibited.

65. The aforementioned acts of Jackson in wrongfully misappropriating PRC's trade secrets were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by Cal. Civ. Code § 3426.4, and exemplary damages, as provided by Cal. Civ. Code §§ 3294 and 3426.3(c).

**THIRD CAUSE OF ACTION**

**(Breach of Contract with PRC by Jackson)**

66. PRC hereby realleges and incorporates by reference the allegations set forth above in paragraphs 1-65.

67. The confidentiality provisions in Jackson's employment agreement with PRC and the Confidentiality Policy in PRC's employee handbook, which Jackson acknowledged and agreed to abide by (the "Agreements"), were intended and necessary to protect PRC's legitimate business interests in its confidential and proprietary information.

68. Jackson's employment agreement with PRC and the agreed-to Confidentiality Policy are valid and enforceable contracts between PRC and Jackson.

69. Because of the Agreements, Jackson had an obligation to keep confidential and not to disclose or to make use of any of PRC's confidential and proprietary information, except as authorized by PRC and as necessary for the performance of his duties as an employee of PRC.

70. Because of the Agreements, Jackson also had an obligation not to disclose or to make use of any PRC confidential information, for any purpose, either on his own or on behalf of another business after his employment with PRC had terminated.

-16-

71. Jackson breached the Agreements by taking and using PRC's confidential and proprietary information for his own benefit and for the benefit of his new employer. On information and belief, Jackson continues to breach the Agreements by wrongfully utilizing PRC's confidential information to the benefit of others and in the course of his employment with CSI.

72. PRC has suffered harm as a result, including attorneys' fees and expenses.

73. PRC has fully performed all its obligations and has satisfied all conditions for performance under the Agreements.

74. Jackson has willfully, and with conscious disregard for the contractual obligations owed to PRC, breached the Agreements.

75. Unless restrained and enjoined by the Court, Jackson will continue to breach the Agreements.

76. As a foreseeable, direct, and proximate result of Jackson's breach of contract, PRC has suffered irreparable injury in the loss of control over its confidential and proprietary information and pecuniary damages. PRC will continue to suffer such injury, loss, and damage unless and until PRC is enjoined from further use or disclosure of PRC's confidential and proprietary information.

77. Jackson has derived and received and will continue to derive and receive from the aforementioned breach of contract, gains, profits, and advantages, many of which are not presently known to PRC. As a result, PRC should be required to disgorge these gains, profits, and advantages in restitution for Jackson's breach.

78. PRC is therefore entitled to injunctive relief or specific performance of the Agreements.

/ / /

/ / /

/ / /

-17-

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment in its favor against Defendant for the following relief:

A.    That Defendant be adjudged to have misappropriated Plaintiff's trade secrets in violation of the United States Defense of Trade Secrets Act of 2016, 18 U.S.C. §§ 1836 *et seq.*, and that Defendant's acts in doing so be adjudged willful, malicious, and done knowingly;

B.    That Defendant be adjudged to have misappropriated Plaintiff's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

C.    That Defendant be adjudged to have breached the Agreements with PRC, and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

D.    For an order that Defendant specifically perform the Agreements;

E.    For preliminary and permanent injunctions enjoining Defendant from breaching the Agreements;

F.    That the Court award Plaintiff its actual damages caused by Defendant's breach of the Agreements;

G.    That Defendant be adjudged to have been unjustly enriched;

H.    That Defendant be required to return all of Plaintiff's trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of Plaintiff's trade secrets and confidential information;

I.    That Defendant be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiff's trade secrets and enjoined from further using and disclosing to any third parties any of Plaintiff's

-18-

trade secrets;

J.    That the Court order Defendant to make any computer, computer device, email account, and/or cloud storage account that may contain Plaintiff's Confidential Information available to an independent computer forensic examiner to (a) access, image, preserve, and review any such computer, computer device, email account, and/or cloud storage account, and (b) delete any such information that the independent computer forensic examiner finds;

K.    That Defendant be directed to file with this Court and to serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth the manner and form in which Defendant has complied with the injunction;

L.    That Defendant be required to account to Plaintiff for any and all gains, profits, and advantages derived, and all damages sustained by Plaintiff, by reason of Defendant's acts complained of herein;

M.    That Plaintiff be awarded exemplary damages from Defendant pursuant to Cal. Cal. Civ. Code §§ 3294 and 3426.3(c);

N.    An award of taxable costs;

O.    That this Court award such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 27, 2026          By: /s/ *Adam B. Powell*
                                    Brian C. Claassen
                                    Adam B. Powell
                                    Daniel C. Kiang
                                    Ashley C. Morales

                                    Attorneys for Plaintiff
                                    PACIFIC RIM CAPITAL, INC.

70377732

-19-